VIRGIL P. ETTINGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76248.    Promulgated June 30, 1937.

*Frank J. Albus, Esq.*, for the petitioner.
*P. A. Bayer, Esq.*, for the respondent.

OPINION.

HARRON: The petitioner claims that the securities he received from the Richard Ettinger partnership were gifts to him and he has reported a claimed loss under the provisions of section 113 (a) (2) of the Revenue Act of 1928. If the petitioner received these securities as gifts he is entitled to the loss. The respondent contends that the petitioner received the securities by purchase and not as gifts.

Richard Ettinger has testified as follows:

I told Virgil that I wanted to do something for him because I had done things for other members of the family and I said that I wanted to give him stock and that I had two objects in giving him that stock; one was to make him a gift that would benefit him and the other was to get a benefit by taking some stock losses that I could not have benefited from myself.

In 1931 the petitioner had one of his most profitable years in business. He received gross receipts of $254,785.46 from his business and a net income after business expenses of $155,088.79. The petitioner's brother, Richard, was familiar with the petitioner's income every year, according to the petitioner's testimony. When the petitioner received the stock he intended to sell it before the end of the taxable year to realize losses.

The petitioner received securities from the partnership account agreeing to pay an amount determined by Richard Ettinger. The parties have referred to this amount as a "lien" on the stock. It is true that the partnership had a margin account with Lamborn, Hutchings & Co. but there is no evidence that these brokers had any lien in any specific amount on the securities transferred to the petitioner. On cross-examination, Richard Ettinger testified as follows, with reluctance, and at questioning of the presiding Member of the Board:

* * * the way I arrived at it (the amount to be paid by the petitioner) was to see what the market value of the stock was and to take some figure, materially less than the market value.

The facts show that the figure fixed by Richard Ettinger was not "materially" less but a few points under the market price on the date of transfer, i. e., on December 14, 1931, 100 shares of Union Pacific were transferred to the petitioner. The stock was selling around $75 per share on that day on the market. Richard fixed the amount to be paid by petitioner at $70 and petitioner paid $7,000

for 100 shares of Union Pacific. On December 17 the petitioner sold this stock on the market at around seventy-two and received $7,278.50. All the transactions are similar.

On the facts we are of the opinion that the amount paid by the petitioner for each block of stock was not payment of the broker's lien on such stock, if there was one. Furthermore, we are not concerned with the margin account of Richard Ettinger's partnership for no facts are present as to the nature of his credit with his broker. He had a large account with Lamborn, Hutchings & Co. and we know nothing with respect to whether they were pledges of any stock or had any particular liens in any particular amounts on stock owned by the Richard Ettinger partnership. In any event, there is not as a matter of law any proportional lien against each block of stock in a margin account (Meyer, The Law of Stock Brokers and Stock Exchanges, p. 314), and so long as a broker considers the margin sufficient he will, of course, allow a customer to order out any block of securities he desires. There is no evidence that Richard Ettinger's margin account was under-margined or that the demand for payments in specific amounts was demanded by the broker.

Having the fact before us that the so-called "lien" was fixed by Richard Ettinger by his own arbitrary method without any consultation with his brokers, we hold that the amounts paid by petitioner constituted a purchase price; that petitioner *bought* the stock; and that there was no gift to him of the stock. The brokers acted solely as agents in transferring both the securities and payments involved and the result is the same as if the partnership had transferred directly to the petitioner the $28,487.50 worth of securities and the petitioner had paid the $25,400 directly to the partnership. We are unable to disregard the substantial payments by the petitioner for the stock. A gift is a transfer without consideration but here the petitioner paid almost the full market price for the securities. The Richard Ettinger partnership later purchased most of the same securities again on the market and it is apparent that the total amount paid by the petitioner would easily enable the partnership to reinvest in these good investments.

There have been decisions where this Board and the courts have looked through the labels of "gift" and "sale" and held that where the consideration was greatly less than value there was part gift, a gift being made of the excess of the value over the "bargain price" paid. See *May Rogers*, 31 B. T. A. 994. Each case must be decided on its own facts and we believe there is no requirement here that it be held that any part of the value of the securities passed to the petitioner as a gift. It is held that the respond-

268

ent is sustained. It is held further that the basis to the petitioner is the cost to him of the stock and he is taxable on the gain realized from the sale of the securities in the taxable year. Since we hold that the petitioner purchased the stock there is no need for considering his effort to convert what he chose to believe a "capital loss" into an "ordinary loss." With respect to a few sales and repurchases of stock shown in the findings of fact the petitioner realized a loss of $35. He is entitled to this and his net gain appears to be $2,394.

In determining the market value of the several blocks of stock on the respective dates of transfer to the petitioner we have used the closing quotations on the New York Stock Exchange, following *Luther Bonham*, 33 B. T. A. 1100, 1105; affd., 89 Fed. (2d) 725, and *St. Louis Union Trust Co. et al., Co-trustees*, 30 B. T. A. 370, 381.

*Decision will be entered under Rule 50.*