Beck-Brown Realty Co., Inc., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 102821. Promulgated May 28, 1942.

*Lawrence A. Baker, Esq.*, for the petitioner.
*F. S. Gettle, Esq.*, for the respondent.

### OPINION.

Hill: This proceeding is for the redetermination of deficiencies determined by respondent as follows: Income tax for the years 1934 and 1936 in the amounts of $588.08 and $6,309.53, respectively; excess profits tax for the year 1936 in the amount of $245.96; and personal holding company surtax for the years 1934 and 1936 in the amounts of $2,150.57 and $3,268.05, respectively. Respondent also determined a delinquency penalty in the amount of $537.64 for failure to file a personal holding company return for the year 1934 within the time prescribed by law.

Petitioner assigns as error the action of respondent (1) in determining that petitioner realized income consisting of lending fees or

commissions in the year 1934 in the sum of $6,198.60, and (2) in determining that petitioner realized gain in the sum of $22,618.75 on liquidation of Sphinx Trading Corporation in the year 1936.

Petitioner is a New York corporation, with its principal office at Brooklyn. It kept its books in the taxable years and filed its income and excess profits tax returns for such years on the basis of cash receipts and disbursements. Its income tax returns for the taxable years were filed with the collector of internal revenue for the first district of New York. It derived its income principally from interest on loans and rents from real estate. All of petitioner's stock was owned by Moses L. Parshelsky, but he was not an officer of the corporation.

*Issue 1.*—On January 30, 1931, petitioner loaned $40,000 to the Ageloff Realty Co., hereinafter called Ageloff, pursuant to a written agreement of the same date. The loan was evidenced by a promissory note executed by Ageloff, bearing interest at the rate of 6 percent per annum and maturing in three months from the date thereof. The written agreement stipulated that Ageloff should be entitled to three consecutive renewals of the promissory note, each for a period of three months, provided all the terms and conditions of the agreement were complied with. Ageloff was granted the option under the agreement to renew the full amount of the loan for a further period of one year upon the payment of a fee of 10 percent, exclusive of the legal interest, provided such fee and interest on the maturing note were paid at least five days prior to the due date of the note. Ageloff was also given a further option of renewing the loan for a second additional year upon the payment of a fee of 12 percent, exclusive of the legal interest. This agreement was signed on behalf of petitioner by Isaac L. Brown, its president.

On January 30, 1931, pursuant to the loan agreement, petitioner gave Ageloff a check for $40,000, signed by Brown and Charles F. Beck as president and treasurer of petitioner, respectively. Simultaneously therewith Ageloff gave petition its check for $3,200, representing the amount of the commission for the loan. Petitioner borrowed from Moses L. Parshelsky, its sole stockholder, the sum of $40,000 with which to make the above mentioned loan, and Parshelsky's account on petitioner's books was credited with that amount. On January 31, 1931, Parshelsky's account was also credited in the sum of $10,747.25, which included $3,200 representing the amount of Ageloff's check for the loan commission. This amount of $3,200 was not recorded as income on petitioner's books, nor otherwise recorded except as a credit to Parshelsky's account and as a debit to cash. Also, the amount was not included as income in petitioner's income tax return for 1931.

In 1932 the loan in the principal amount of $40,000 was extended for an additional year. Under the original loan agreement Ageloff was required to pay $4,000 for such extension, of which amount $1,000 was paid in cash and for the remainder thereof Ageloff gave three notes of $1,000 each due July 25, August 25, and September 25, 1932, respectively. Also, on or about June 25, 1932, Ageloff paid $100.66 interest on the $4,000 for the period January 30 to July 1, 1932. The record discloses that at least two of these notes were paid in 1932. The record does not disclose whether the third of such notes was paid. Petitioner incurred in 1932 an expense of $1.40 for protest fees which it charged against and deducted from the $3,000 so collected.

In 1933 the loan in the principal amount of $40,000 was again extended for one year and a commission of $4,800 therefor was paid to petitioner by Ageloff in 1933. The amount of this commission was reported by Moses L. Parshelsky in his individual income tax return for 1933.

Petitioner recorded on its books only three $1,000 payments on account of the commission for the extension of the loan in 1932, and there is no explanation in respect of the balance. Petitioner's books were very poorly kept, with little regard to the distinction between corporate business and individual transactions of Parshelsky. Apparently the corporation was largely treated as Parshelsky's *alter ego*.

Petitioner did not report in its income tax return for 1932 any part of the $3,000 paid to it as above indicated. In 1934 the loan was repaid to petitioner in the full face amount of $40,000. Of the amount so paid, petitioner reported as income in its tax return for 1934 $2,998.60 as fees, representing $3,000 of the agreed amount of the 1932 renewal commission less protest fees of $1.40.

In computing the deficiency, respondent included in petitioner's gross income for 1934 the amount of $3,200 representing the first commission charged for making the Ageloff loan, which was paid in 1934. Petitioner contends that such amount was not income to it in 1934 when the loan was paid, but constituted income (although petitioner says it was not the owner thereof) in 1931 when the amount was received from Ageloff.

Petitioner's first and principal contention is that, under a prior agreement, all interest, fees, and commissions on the Ageloff loan belonged to Moses L. Parshelsky, its sole stockholder, as consideration for his furnishing the money to make the loan. For this reason petitioner argues (1) that respondent erred in including in its income for 1934 the original commission of $3,200, and (2) that it erred in reporting as income in its return for 1934 the amount of $2,998.60 representing 1932 renewal commission. Petitioner contends that it is entitled to a refund or credit of the tax paid on the latter amount.

It is now well settled that where a commission, charged for the making of a loan by a taxpayer on a cash basis, is deducted from the face amount of the loan, such commission is received and constitutes income in the year when the loan is paid. See *Chicago City Bank & Trust Co.*, 24 B. T. A. 892; *Cosmopolitan Bond & Mortgage Co.*, 30 B. T. A. 717; *Vancoh Realty Co.*, 33 B. T. A. 918, and authorities cited. In *Blair* v. *First Trust & Savings Bank*, 39 Fed. (2d) 462, affirming 11 B. T. A. 1034, the court stated the principle as follows:

> It is plain that until the loan is paid or rediscounted the respondent has earned no profit, but has simply parted with its funds on the faith of the security. The commission is not actually received until respondent gets back what it has previously paid out plus the commission. The deduction of the commission from the face of the loan brings nothing into the coffers of the bank.

In the present proceeding the original commission was not deducted, in form at least, from the face of the loan, and only the balance delivered to the borrower. Petitioner gave its check to Ageloff for $40,000 and Ageloff gave back to petitioner its check in the sum of $3,200 to cover the commission. The result was precisely the same as if petitioner had deducted the commission from the face amount of the loan and paid the balance to Ageloff. By either method, petitioner would have been out of pocket the net amount of $36,800, and would have had Ageloff's promissory note for the principal amount of $40,000. Petitioner parted with its money and at·that time in fact received nothing. The commission was, therefore, not income received in 1931, but income received in 1934.

The facts pertaining to the payment of the commission for the extension of the loan in 1932 for one year were in brief as follows: The loan originally matured on or about January 30, 1932, but the term of the loan was extended for an additional year from that date. The amount of the commission for such extension was fixed at $4,000 under the terms of the original agreement between the parties respecting such loan. Subsequently, at different times during the year 1932, Ageloff paid to petitioner on account of such renewal commission the total sum of not less than $3,000. The petitioner did not treat the $3,000 so received as income to it in that year and did not report it for tax purposes for the year 1932. Petitioner treated the $3,000 in question as income received in 1934, the year in which it received $40,000 in full payment of the loan note in that face amount, and reported it (less a charge of $1.40 for protest fees) in its income tax return for that year.

It was encumbent on petitioner to credit the $3,000 received in 1932 in respect of the renewal of the loan either to the payment of the renewal commission or as a payment on the loan. Since the petitioner did not report the receipt of such amount as income in 1932,

it must have treated it as a credit on the principal of the loan instead of on the commission, so that when the note in the full face amount of $40,000 was paid to petitioner in 1934 there was included in such payment the commission of $3,000 for the renewal of the loan in 1932 as well as the original commission of $3,200. We find nothing in the record to impel us to hold that petitioner did not properly report the 1932 renewal commission in its income tax return for 1934.

The second point urged by petitioner is that these commissions did not in any year constitute income taxable to it for the reason that they were to be paid to Parshelsky, its sole stockholder, as consideration for his furnishing the money with which to make the loan. This contention, we think, can not be sustained. Parshelsky testified that he had an understanding with his brother that all interest or money coming out of that loan was to go to him because he "put up the money." However, his brother was neither a stockholder nor officer of petitioner corporation, and no agreement with it is shown.

In any event, the fact remains that, while Moses L. Parshelsky loaned the money to petitioner, the latter executed the contract with and made the loan to Ageloff and received from Ageloff in its own right all amounts in payment of commissions and interest and in repayment of principal. Hence, commissions and interest constituted income to petitioner. We are not here concerned with the question of whether or not petitioner was obligated to pay over the same or similar amounts to its stockholder as consideration for his advancement of the money with which to make the loan, or whether or not, if so paid over, such amounts constituted taxable income to him.

To sustain petitioner's contention would require us in effect to disregard the separate entity of the corporation and treat the transaction as having been consummated by Parshelsky. This we think we can not do under the facts shown here. The corporation was not the agent of Parshelsky in making the loan, but acted in its own behalf in the course of a business regularly carried on by it.

Parshelsky owned all of petitioner's stock, and was in complete control of the corporation. Obviously, he could as an individual have made the loan in question to Ageloff, and any commissions and interest received would have been his income. On the other hand, it was his privilege to advance the money to petitioner and cause the loan to be made by it. He elected to make the loan in the form of a corporate transaction, and he now must abide the tax consequences, notwithstanding it may be to his financial disadvantage to do so. *Higgins* v. *Smith*, 308 U. S. 473.

A corporation is legally distinct from its shareholders and, in the absence of fraud or unfairness, their separate transactions will not be disregarded. *Dalton* v. *Bowers*, 287 U. S. 404; *Burnet* v. *Common-*

*wealth Improvement Co.*, 287 U. S. 415; *E. H. Nielsen Co.*, 26 B. T. A. 223; *William F. Humphrey*, 33 B. T. A. 442. The separate entity of a one-man corporation will not be disregarded where there is no evidence of fraud. *Wagner* v. *Lucas*, 89 Fed. (2d) 391. Nor will the corporate entity be disregarded merely because the corporation was a family corporation organized for convenience. *Romie C. Jacks*, 19 B. T. A. 559.

There are, of course, circumstances in which corporate form will be disregarded in order to prevent fraud or an unfair result in determining tax liability, but such exceptions to the general rule have no significance here. For an extended discussion of this point, see *Higgins* v. *Smith, supra,* and other cases above cited. In the present case Parshelsky dealt with the corporation as an entity, and there is no justification for saying that the business of the corporation was that of its stockholders. *Dalton* v. *Bowers, supra.*

In the light of the conclusions reached above, we need not consider respondent's further contention that in any event petitioner is now estopped from taking the position that the amount of the 1932 renewal commission reported in its return for 1934 was income for 1932.

On the first issue, the action of respondent is approved.

*Issue 2.*—In 1929 the Par Holding Co. purchased 625 shares of stock of the Sphinx Trading Corporation at a cost of $62,500, or $100 per share. All of the stock of the Par Holding Co. was owned by Isaac Parshelsky, brother of Moses Parshelsky. About December 30, 1930, the Par Holding Co. sold the 625 shares of Sphinx stock to petitioner for $6,250, or $10 per share. The stock was then worth considerably less than when it was acquired by the Par Holding Co., and it is conceded by the parties hereto that Isaac Parshelsky wanted his corporation to dispose of the stock in order to take a loss deduction for income tax purposes.

In 1936 the Sphinx Trading Corporation was liquidated, and petitioner received $28,868.75 as a liquidating dividend on the stock of that corporation owned by it. In its return for 1936 petitioner claimed that it sustained a loss by reason of the liquidation, allowable deduction for which was limited by statute to $2,000. Respondent determined that petitioner realized a capital gain, which was explained in the deficiency notice as follows:

> In 1936 you received $28,868.75 as a distribution in liquidation of 625 shares of stock of Sphinx Trading Corporation acquired by you on December 30, 1930, at a cost of $6,250. Accordingly, you realized taxable gain in the amount of $22,618.75 in 1936.

The value of the capital stock of the Sphinx Trading Corporation, based upon market quotations on January 17, 1931, for the securities owned by the corporation, was $61.05 per share.

In its tax return for the year 1930 the Par Holding Co. claimed a loss deduction of $56,250 on the sale of the Sphinx stock to petitioner, being the difference between the cost to Par of the stock in the amount of $62,500 and the amount of $6,250 received by Par from petitioner for the stock. For reasons not appearing in the present record, such deduction was disallowed by the Commissioner. Isaac Parshelsky died on March 18, 1935, prior to the hearing of this proceeding.

Petitioner's contention in substance is that the difference between $6,250, which it paid for the stock in 1930, and $38,156.25, representing the fair market value of the stock at that time, constituted a gift to petitioner; that its basis was the fair market value and, since the amount received in liquidation was less than such basis, it derived no taxable income, but sustained a loss. On brief petitioner says it is reasonable to assume that Isaac Parshelsky, being motivated by a desire for a tax loss, intended to make an indirect gift of the difference between the sale price and the value of the stock to his brother, Moses Parshelsky, through the medium of the two corporations.

We think petitioner's argument can not be sustained. The only material facts shown by the record on this point are that the Par Holding Co., all of whose stock was owned by Isaac Parshelsky, sold the Sphinx stock to petitioner, all of whose stock was owned by Moses Parshelsky, at a price of approximately $50 per share less than market value. From these bare facts, we are asked to conclude that the difference between the sale price and the market price represented a gift from Par to petitioner. In the absence of any persuasive evidence of donative intent, the facts stated do not in our opinion impel such an inference. Certainly the action of the Par Holding Co. in claiming a deduction from gross income for 1930 of the full amount of the difference between the cost of the stock to it and the amount of the sale price to petitioner negatives the idea that any part of such difference was intended by that corporation as a gift. Furthermore, Moses Parshelsky testified to conversations between him and his brother respecting the matter, and his testimony falls far short of establishing any declared intention on the part of Isaac or his corporation to make a gift.

As was pointed out by us in the case of *E. Louis Jacobs*, 20 B. T. A. 529, the transaction here involved lacks one of the essential elements of a gift, i.e., absence of a valuable consideration, and a contention in such circumstances that the transfer was intended in part to constitute a gift could be sustained only upon the most convincing evidence. Such evidence is wholly absent here.

On the second issue, we find for respondent.

*Decision will be entered for respondent.*