Nelson Trottman and Gwendolen S. Trottman v. Commissioner.
Trottman v. Commissioner
Docket No. 112463.
United States Tax Court
1944 Tax Ct. Memo LEXIS 299; 3 T.C.M. (CCH) 316; T.C.M. (RIA) 44112; April 5, 1944
*299 Capital gains and losses: Assignment of purchase contract installments for annuity agreement: Gain from exchange of capital assets v. ordinary gain. - In determining the present value of the consideration paid by taxpayer for acquisition of an assigned purchase contract, annuity payments, as base cost, must be discounted, and the gain realized on payments received under the assigned purchase contract is not taxable as capital gain. Merritt C. Bragdon, Esq., for the petitioners. Richard L. Greene, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent determined a deficiency of $143.27 in petitioners' income tax for the calendar year 1940. Three issues were assigned by the petitioners but they concede two of these. The remaining issue is the extent to which a payment, received in the taxable year under a contract, constituted taxable income. This issue is resolved by the answer to three questions: (a) whether the cost to petitioner, Nelson Trottman, of the contract acquired by him in December 1938 was $18,930.24 or $22,824, (b) whether the amount received on such contract in 1940 in excess of the amount of its cost prorated to that year was *300 the realization of a value received by gift or taxable income, and (c) if any portion of such amount constituted taxable income, whether it was taxable as capital or ordinary gain. Certain facts were stipulated and are included by reference. Additional facts set out in our findings of fact have been found upon testimony and exhibits introduced on the hearing. Findings of Fact The petitioners are husband and wife and residents of Evanston, Illinois. They filed a joint return for the year in question with the collector of internal revenue for the first district of Illinois. The word "petitioner", as used hereinafter, will refer to the petitioner Nelson Trottman. Petitioner is a lawyer. His father, James Trottman, died in 1932 leaving all his property to his wife, Margaret Trottman, petitioner's mother, who, together with petitioner, was named as executor of his will. Included in the estate were certain shares of preferred and common stock of the Rosenthal Corn Husker Company and stock of the Rosenthal Manufacturing Company, with which the decedent had been connected as an officer and legal counsel prior to his death. On February 15, 1934, during the administration of the estate, *301 petitioner and his mother, as executors, sold this stock to the Rosenthal Corn Husker Company for $2,500 in cash and an agreement by the purchaser to pay, in addition, for each of the succeeding 8 years, to and including the year ending December 31, 1941, a sum equal to 3 1/2 per cent of the amount of its net sales for such year. The amount of its net sales was to be computed as gross sales less freight, discounts, returns and commissions. Upon completion of the administration of the James Trottman estate the above-mentioned contract was distributed to petitioner's mother. During the period of administration and at all times subsequent thereto petitioner has represented his mother in connection with her business affairs, has prepared her income tax returns and handled all matters pertaining thereto. On October 29, 1938, petitioner's mother assigned the aforesaid Rosenthal contract to the Marshall & Ilsley Bank as security for a loan, or loans, aggregating $6,000 which had been applied for by her and petitioner. On December 28, 1938, the petitioner and his mother entered into a written contract under which she agreed to assign to petitioner the aforesaid Rosenthal contract, subject *302 to the prior assignment as security, in consideration of petitioner's agreement to pay her an annuity of $150 per month throughout her life, beginning January 1, 1939. This contract provided, inter alia, as follows: "WHEREAS, Margaret S. Trottman desires to obtain an annuity payment of $1800.00 during each and every year for the remainder of her lifetime from Nelson Trottman in consideration of an assignment by her to him of said agreement of February 15, 1934, subject only to the collateral assignment aforementioned, and "WHEREAS, said Nelson Trottman is willing to pay to said Margaret S. Trottman the sum of $1800.00 during each and every year during the remainder of her lifetime in consideration of the receipt of the assignment aforementioned. * * * * *
"1. The party of the first part agrees to pay to the party of the second part the sum of $1800.00 in equal monthly installments on the first day of each and every month, respectively, during each year beginning with the first day of January, 1939, if the party of the second part be then living, and continuing thereafter throughout the lifetime of said party of the second part. * * * "2. The party of the second part agrees *303 to sell, assign, transfer and deliver to the party of the first part that certain agreement made and entered into on the 15th day of February, 1934, by and between Nelson Trottman and Margaret S. Trottman, as executors of the Last Will and Testament of James Trottman, Deceased, and Rosenthal Corn Husker Company * * * subject only to the assignment heretofore made by said Margaret S. Trottman to Marshall & Ilsley Bank under date of October 29th, 1938, as collateral security for the payment of obligations then or thereafter existing and becoming due and owing from said Margaret S. Trottman and Nelson Trottman, or either of them, * * *. "3. Both parties hereto agree that the present fair cash market value of the aforementioned agreement of February 15, 1934, hereto attached as Exhibit 'A', is the sum of $20,000.00. * * * * *
"5. This agreement constitutes the entire contract between the parties hereto." * * * * *
No gift tax return was filed by, or on behalf of, petitioner's mother nor was any notice of a gift filed by petitioner with respect to the transfer of the Rosenthal contract from her to him. The income tax return of petitioner's mother for the calendar year 1939 was prepared *304 by petitioner, signed by his mother, and duly filed. It contained the following statement with respect to the transfer of the Rosenthal contract to the petitioner: "Royalty contract with Rosenthal Corn Husker Company, Milwaukee, Wisconsin, having four years to run was transferred to my son, for consideration of annuity of $1800. * * *" Petitioner duly filed his income tax returns for the years 1939, 1940 and 1941 and attached to each of such returns a detailed statement with respect to the acquisition by him of the Rosenthal contract from his mother. These statements contain no inference or suggestion that the transfer was, as to any part, donative. Petitioner had various conferences or discussions with a representative of the Bureau of Internal Revenue relative to the examination made by it of his returns for 1939 and 1940 and in none of these discussions, which dealt with petitioner's acquisition of the Rosenthal contract and his taxable gain from payments received thereunder, was claim or suggestion made by petitioner that this transfer to him by his mother was to any extent donative in character. Subsequent to these conferences and on May 20, 1942, petitioner called the representative *305 of the Bureau by telephone and referred him to a decision in the case of Gillespie v. Commissioner, which had appeared in certain of the tax services on that date and which dealt with a question in which a transfer was held to be in part a sale and in part a gift. Petitioner then for the first time made the assertion and claim that the transfer of the Rosenthal contract to him by his mother was partly donative. On the date of the transfer of the Rosenthal contract to petitioner by his mother and his agreement to pay her in consideration an anuity of $150 a month, her life expectancy was 12.68 years and the present value of such an annuity, based on a three per cent compound interest rate as of that date, was $18,930.24. During the year 1940 the taxpayer received $10,906.15 under the Rosenthal contract and in his income tax return deducted a claimed basis thereon as allocated to that year of $5,706 and reported the difference of $5,200.15 as ordinary income. This basis was computed by using a total base cost for the contract of $22,824. This amount was computed by multiplying the annual annuity payment to his mother of $1,800 by her life expectancy of 12.68 years. This cost *306 was then allocated one-fourth to each of the four years the contract had yet to run. Petitioner acquired the Rosenthal contract from his mother not by gift but for a consideration represented by an annuity of $1,800 to her for the period of her life and his cost for such contract was the then value of such annuity or $18,930.24, which was the cost determined by the respondent in computing gain to petitioner with respect to the payment thereunder received in the taxable year. Opinion Petitioner contends, first, that the value of the consideration paid to his mother, represented by his annuity agreement of $1,800 per year for her life, is not measured by the present value of the total payments which would be received over the term of her life expectancy but, on the other hand, is the gross amount of such payments. In this contention petitioner is in error. The payments are to be made in the future. We are concerned only with their present value. Respondent is sustained upon his action in discounting these payments to determine the present value of the consideration paid by petitioner. Cf. Florence L. Klein, 6 B.T.A. 617; G.C.M. 11655, *307 C.B. XII-1, p. 159. Petitioner's second contention is that the Rosenthal contract, at the time acquired by him, had a value largely in excess of the value of the annuity agreed to be paid and that this excess value in the contract represented a gift to him by his mother. Upon this premise, it is then argued that the amount he received under the contract in excess of the value of the annuity - the consideration paid for the contract - was a gift and so nontaxable, or if taxable then at capital gain rates on the ground that it was consideration for the sale of capital assets by the donor. The case of Bessie B. Hopkinson, 42 B.T.A. 580; affd., 126 Fed. (2d) 406, is cited as authority for this position. Aside from other possible reasons, the Hopkinson case is not applicable because there was no gift here. We have so found. Petitioner acquired the contract from his mother, not by a gift but solely in consideration of his paying her an annuity of $150 per month. The evidence, we think, amply supports this finding. One essential characteristic of a gift is the existence of donative intent in the donor at the time of the *308 purported gift. Virgil P. Ettinger, 36 B.T.A. 264; affd., 97 Fed. (2d) 1000; Beck-Brown Realty Co., 46 B.T.A. 1225. The evidence, in our opinion, clearly contradicts the existence of such intent. It is true that both petitioner and his mother testified that they believed that the contract was worth more than the consideration being paid for it by petitioner and that she wished him to have such excess as a gift. But this testimony is not alone. It is wholly inconsistent with not only many admitted or established facts and circumstances, but also writings. The recitation of the contract executed by petitioner and his mother states that the payment of the annuity by petitioner to his mother is the consideration for her assignment of the contract to him. It specifically agrees that the then "fair cash market value" of the contract was an amount approximately equal to the then value of the annuity. It expressly purported to contain "the entire contract between the parties hereto." The income tax return of the mother of petitioner for 1939, prepared by petitioner, contained a statement referring to *309 the transfer as being one "for consideration of annuity of $1,800." It did not mention a gift. Petitioner did not take the position that the transfer included a gift until sometime after the transfer when, because of a decision of the courts of which he was advised, such position seemed beneficial to him taxwise. Petitioner is an attorney and clearly tax conscious. Surely the tax consequence of a gift, as substantial as this is said to have been, would have been apparent to him. Yet no gift tax return was filed by him for his mother and he did not file an information return reporting the gift as received. Consequently, we think the amount of taxable gain, as computed by respondent, was correct. We are also in accord with the action of respondent in taxing this gain as ordinary income. Petitioner acquired the contract for a consideration. The sums received by him thereunder were not for the sale or exchange of a capital asset. Petitioner sold nothing. The situation is the same as that presented in Joseph A. Guthrie, 42 B.T.A. 696. In that case the petitioner purchased the distributive share due a beneficiary of an estate. That share consisted of amounts *310 to be received as proceeds of sales of real property of the estate. Petitioner ultimately received payments aggregating more than twice the cost of his purchase. In that case we said: It may be accepted that petitioner purchased a capital asset as that term is defined in section 117 (b) of the Revenue Act of 1936, cf. Blair v. Commissioner, 300 U.S. 5, and that the gain realized in 1937 was upon a capital asset held for more than one year but not for more than two years, section 117 (a). But the limitation upon the percentage of gain recognized is prescribed only in respect of gain recognized "upon the sale or exchange" of a capital asset. Unless there has been a sale or exchange, the gain is fully recognized, even though the gain is derived from an investment in a capital asset. Hale v. Helvering, 85 Fed. (2d) 819. * * * Decision will be entered for the respondent.