John M. Coulter and Lucia M. Coulter v. Commissioner.
Coulter v. Commissioner
Docket No. 20491.
United States Tax Court
1950 Tax Ct. Memo LEXIS 241; 9 T.C.M. (CCH) 248; T.C.M. (RIA) 50077; March 23, 1950
*241 William Wallace Booth, Esq., for the petitioners. George C. Lea, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent's determination of deficiencies of $1,425.81 in income and victory tax for 1943 and $9,591.65 in income tax for 1944 is partly in controversy. Computation of tax for 1943 involves the year 1942, under the Current Tax Payment Act of 1943. Certain adjustments are not contested and one issue has been conceded by petitioners. The principal remaining question is whether petitioners are entitled to a deduction in 1944 for a charitable contribution under section 23(o)(2) of the Internal Revenue Code, by reason of a transaction in which petitioners sold to an educational institution certain property at a sales price alleged to have been less than its fair market value. Petitioners also claim deductions for depreciation and maintenance expense for the taxable years on the same property, formerly occupied as a residence. Findings of Fact Petitioners, husband and wife, hereinafter sometimes called John and Lucia, respectively, reside in Greensburg, Pennsylvania, and filed joint returns for *242 the periods involved with the collector of internal revenue for the twenty-third district of Pennsylvania. In 1926 John's father, Henry W. Coulter, owned real estate near Greensburg, Pennsylvania, including a tract of land containing approximately thirteen acres upon which, in that year, he constructed a residence. The residence contained thirty rooms and eight baths. A three-story six-car garage containing a dwelling apartment on the third floor was also constructed. The residence was subsequently occupied as a home by the Coulter family. In 1932 Henry W. Coulter died. His will conveyed a one-fourth interest in the above property to each of his four children, including John. John and his brother, Richard Coulter III, continued to live in the house. In 1933 petitioners were married. Between the years 1935 and 1937, petitioners had two children. Petitioners and Richard Coulter III, continued to reside upon the property and they shared the expense of maintaining the premises. In 1938 Richard Coulter III died. His estate, including his interest in the property here involved, was conveyed, under his will, to three trustees, John, William A. Coulter, and the City Bank Farmers Trust *243 Company. The trustees were empowered "* * * to sell any such property at either public or private sale for cash or on credit." Petitioners continued to reside upon the property. Subsequently they decided that the cost of maintaining the premises was too great and in 1939 they offered it for sale. Petitioners continued to reside on the premises until February 1943 when they moved out. Petitioners listed the property for sale at that time with George R. McNary, a real estate broker. Several inquiries were made by potential purchasers and on one occasion a sale was almost consummated but the prospective purchaser withdrew. The property was not readily marketable. During 1943 and 1944 petitioners expended various sums in connection with the property, including the employment of a watchman to look after it. Amounts thus expended totaled $1,173.47 in 1943 and $1,215.46 in 1944. The property was never rented. On several occasions John had had negotiations with Seton Hill College, a Pennsylvania corporation owned and operated by the Sisters of Charity, an order of the Catholic Church. The College was situated on adjacent property, and the College officials had given consideration to acquisition *244 of the Coulter property. In 1939 the College had rejected an offer to sell the property to it for $60,000. Other subsequent negotiations with the College were also unsuccessful. In 1944 petitioner listed the property for sale for $30,000 with George W. McNulty, a real estate appraiser and broker, at an agreed commission of 5 per cent. McNulty had difficulty finding potential purchasers. He approached the officials of Seton Hill College who were than interested in the Coulter residence as a possible dormitory for students. They agreed to purchase the property for a consideration of $30,000. During negotiations neither McNulty nor petitioners stated to the officials of the College that a gift or contribution was intended. The property was conveyed to Seton Hill College under a deed dated June 20, 1944, and recorded on September 12, 1944. The transferors were petitioners, Stella Coulter Durrance, and her husband John Durrance, Henry W. Coulter, Jr., and his wife Rose Mary Coulter, and John, William A. Coulter, and City Bank Farmers Trust Company, as trustees of the Estate of Richard Coulter III. John executed the deed in his individual capacity and as trustee. The deed provided that *245 the transferors "grant, bargain, sell, alien, release and confirm" the property to the College. The deed contains no recital concerning a gift or contribution. Adjustments for taxes reduced the amount paid in cash by the College to $29,400. The broker's commission of $1,500 was paid to McNulty by the College. A tract of land belonging to Margaret Coulter, aunt of John, lay between the College property and the thirteen-acre tract in question. Margaret Coulter granted the College right-of-way across her property for a road, a pipeline, and sanitary sewer. The College at the same time conveyed to her a small portion of its newly-acquired property. Petitioners did not file gift tax returns for the year 1944. In their income tax returns for 1944 petitioners claimed a deductible loss resulting from the sale of their share of the property. Petitioners' returns for 1943 and 1944 also claimed deductions for depreciation and maintenance expense for the same property. In a notice of deficiency, mailed to petitioners on June 30, 1948, respondent determined that the loss was not deductible on the ground that "the property in question was not income-producing property." Respondent also disallowed *246 the depreciation and maintenance expense deductions claimed by petitioners with respect to the property. The fair market value of the property transferred to the College was $30,000 in 1944. No gift or contribution by petitioners for charitable, religious, or educational purposes was either intended or involved in the transfer of the property to Seton Hill College. Opinion Since we have found as a fact that what petitioners received for their property was its fair market value at the time of the sale, no differential remains to which the designation of a gift could be attached. The factual basis for their contention that a charitable contribution was made in any amount is thus eliminated, and the claimed deduction must accordingly be disallowed. From all the evidence and the demeanor and expression of the witnesses, we think no other findings possible than that petitioners had decided to sell their property promptly; that they attempted and intended to obtain the highest price available from any purchaser; that the uses for which the property was especially suited were the suburban home of a wealthy large family and an addition to Seton Hill College, to which it was adjacent; *247 that their only prospect in the first group having been eliminated, the sole available purchaser was the College, and that the highest price the latter would pay was the amount at which the property actually changed hands. See Jefferson Planting & Manufacturing Co., Ltd., v. Commissioner (C.C.A., 5th Cir.), 31 Fed. (2d) 753. The decision to sell the property at a loss may have been contributed to by the heavy and recurring expenses of maintenance and uncertainty as to the duration of war-time conditions, as well as by the obvious assumption the part of petitioners that a considerable income tax advantage would partly compensate for their failure to recoup the original cost of the property. But whatever the cause, there is no evidence that the sale would have been any the less consummated if the available purchaser had not been a charitable or educational institution, or that the donative purpose formed any significant or impelling component of petitioners' motivation, particularly in the light of the apparent obligation to make a sale and not a gift of the trust property. See Noel v. Parrott (C.C.A., 4th Cir.), 15 Fed. (2d) 669, certiorari denied, 273 U.S. 754. *248 Having disposed of the first issue on the basis of our findings of fact, consideration of the legal aspects of the controversy becomes unnecessary. Cf. J. T. Fargason, 21 B.T.A. 1032, with Virgil P. Ettinger, 36 B.T.A. 264, affirmed per curiam (C.C.A., 2d Cir.), 97 Fed. (2d) 1000. Expenses of maintenance and depreciation are likewise unallowable as deductions. Neither a listing for rent nor partial rental was shown here as in Mary Laughlin Robinson, 2 T.C. 305, to mark the conversion from personal to business use. The deductions are no more permissible here than they were in Warren Leslie, Sr., 6 T.C. 488. See also Allen L. Grammer, 12 T.C. 34. Decision will be entered for the respondent.