William B. BRATTER, Marvin J. Bloch, and Marjorie L. Bratter, Executors of the Last Will and Testament of Edward M. Bratter and Marjorie L. Bratter, Rose Bratter, Martha H., and Franz J. Kurth, and Elizabeth C. and August Rust-Oppenheim, Plaintiffs,

v.

UNITED STATES of America, Defendant.

United States District Court
S. D. New York.
March 31, 1958.

Satterlee, Warfield & Stephens, New York City, F. W. H. Adams, New York City, of counsel, for plaintiffs.

Paul W. Williams, U. S. Atty., New York City, Amos J. Peaslee, Jr., New York City, of counsel, for defendant.

BICKS, District Judge.

The taxpayers reported for Federal income tax purposes certain receipts (hereinafter more fully described) for the years 1948 and 1949 as capital gains. The Commissioner of Internal Revenue determined that they constituted ordinary income and assessed appropriate deficiencies which were paid. Refund thereof is sought in this suit.

Two issues of law and one of fact are presented: are the receipts in question taxable to plaintiffs as long term capital gains; would they have been so taxable to the entity from which taxpayers acquired the right thereto; and was the transaction by which said right was obtained a gift or a purchase.

The background facts have, for the most part, been stipulated. In 1946 International Anemostat Holding Company, Ltd., a British corporation, (hereafter referred to as the British company) entered into a contract with Anemostat Corporation of America, a Delaware corporation (hereafter referred to as the American company) by the terms of which the British company agreed to transfer to the American company certain rights in U. S. patents and applications for patents, described in detail in the contract, in consideration of which

the American company agreed to issue to the British company 10,000 shares of its Class "A" stock and to pay to the British company or its order the sum of $4000. and a percentage of the sales price of all devices protected by the patents and patent applications.

In 1948 the British company assigned its rights to receive such percentage payments to Enterprise Operating Corporation, a New York corporation, which, within a matter of days, assigned said rights to a partnership consisting of all the plaintiffs herein with the exception of Elizabeth C. Rust-Oppenheim.[1]

During the calendar years 1948 and 1949 the percentage payments collected by the partnership were $19,668.66 and $39,075.18, respectively. It is whether the distribution of said sums to the partners is taxable to them as ordinary income or as long-term capital gains which is the ultimate problem to be resolved.

Section 117 of the Internal Revenue Code of 1939 defines, insofar as here material, capital assets as "property held by the taxpayer * * *"[2] and long-term capital gains as "gain from the sale or exchange of a capital asset held for more than 6 months * * *".[3] Plaintiffs' brief concedes, as indeed it must, that a gain may be taxable at capital gain rates only when it results from a sale or exchange of a capital asset. Implicit in plaintiffs' argument also is

that they, the plaintiffs, did not effect a sale or exchange. For purposes of tax treatment, they argue, there is a relation back to the original sale of the property and that sale determines the rate at which the payments received by them are to be taxed. Section 117(a)(4) they contend does not require that the sale or exchange be of an asset held by the taxpayer because the term capital asset therein is not followed by the words "held by the taxpayer". This ignores the unmistakable intent of Congress. Subdivision (a) of section 117 starts out as follows: "(a) Definitions. As used in this chapter—" and then follow the definitions of many terms. It would be a futile gesture for Congress to define a term in one section and then repeat that definition wherever the term is thereafter used in the statute.

The adjusted basis for determining gain or loss by a donee is the same (with an exception not here material) as that of the donor and in Commissioner of Internal Revenue v. Hopkinson, 2 Cir., 1942, 126 F.2d 406, 411 the court held that proceeds from the sale or exchange of property by the donor are taxed to the donee in the same way the donor would have been taxed had he, rather than the donee, received them. In plaintiffs' view the result reached in that case is correct, but the reasoning is fallacious. They would have the holding extended to themselves, notwithstanding the material factual dissimilarity and the clear language of the court to the contrary.[4]

1. Edward M. Bratter, originally a plaintiff herein, died on November 26, 1957. On January 14, 1958 the Executors of his estate, William B. Bratter, Marvin J. Bloch and Marjorie L. Bratter were substituted in this action as parties plaintiff in place of Edward M. Bratter.

2. 1939 Int.Rev.Code § 117(a)(1), 26 U.S.C.A. § 117(a)(1).

3. 1939 Int.Rev.Code § 117(a)(4).

4. The Court stated in part at page 411: "We think it abundantly clear that Congress intended the taxpayer of § 117 to be the person who actually or constructively received the proceeds of the sale, either by virtue of the contract of sale or

of an assignment of it whenever that person, though not the actual seller, is one who would have taken the adjusted basis of the seller under § 113(a)(3), and consequently the holding period of § 117(c)(2), had the property been received and sold by such person to realize capital gain. * * * A seller of capital assets on the installment plan who contemplates the making of a gift of the proceeds might well be deterred from making the sale with its consequent realization of capital gains to be taxed if his donee were taxed on such gains as on ordinary income. Far from being a strain upon the statutory language, it is in line with its apparent purpose to tax a donee of the

In the view of the Court it is not necessary to determine whether the 1936 agreement between the British company and the American company constituted a sale or exchange of patents or patent rights or a license since plaintiffs, as *purchasers* of the rights of the British company, acquired no such identity of interest under § 113 of the 1939 Int.Rev. Code, 26 U.S.C.A. § 113 which could warrant a "vicarious substitution" for their vendor. See Cotlow v. Commissioner, 2 Cir., 1955, 228 F.2d 186; Nelson Trottman, 1944, 3 T.C.M. 316; Joseph A. Guthrie, 1940, 42 B.T.A. 696.

. . Undoubtedly with a view to bring themselves within the holding in Hopkinson case, supra, plaintiffs in their brief for the first time intimate that the transaction pursuant to which they acquired the rights of the British company under the 1936 agreement with the American Company partook of the nature of a gift. The evidence clearly negatives any donative intent and the Court finds that none in fact existed.

Arrowsmith v. Commissioner, 1952, 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed. 6 and Boehm v. Commissioner, 2 Cir., 1944, 146 F.2d 553 relied on in part by plaintiffs are totally inapposite. Golconda Corporation v. Commissioner, 29 T.C. 506, (December 1957) is within the Hopkinson rule and is no authority for plaintiffs' argument, nor is Franklin A. Reece, 1955, 24 T.C. 187 applicable, dealing as it does with only the tax status of a donor.

. The foregoing shall constitute Findings of Fact and Conclusions of Law in accordance with Fed.R.Civ.P. 52(a), 28 U.S.C.A.

Accordingly judgment for the defendant dismissing the complaint is ordered.

proceeds of a sale of capital assets in the same way the donor would have been taxed, had he, instead of his donee, been the recipient of them. Here, as in a somewhat analogous situation in New York Trust Co. v. Commissioner, 2 Cir., 68 F.2d 19, affirmed sub. nom. Helvering v. New York Trust Co., 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361, the acceptance of the gift in trust by the respondent is to be regarded as a vicarious substitution of herself for the donor. * * "